IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § § § § § § § § § § § § § § § § | |
| Plaintiff, | | |
| v. | | Case No. |
| MATTHEW S. HILLIARD, HILLIARD OIL VENTURES, INC. A/K/A DELTA WESTERN COMPANY, HILLIARD HELIUM COMPANY, LLC, and HILLIARD LAND AND ENERGY CORP., | | |
| Defendants. | | |

## COMPLAINT

Plaintiff Securities and Exchange Commission ("SEC" or "Commission") files this Complaint against Defendants Matthew S. Hilliard ("Hilliard") and Hilliard Oil Ventures, Inc. a/k/a Delta Western Company ("Hilliard Oil"), Hilliard Helium Company, LLC ("Hilliard Helium"), and Hilliard Land and Energy Corp. ("Hilliard Land") (together, the "Hilliard Companies") (collectively "Defendants") and alleges as follows:

## SUMMARY

1. From approximately July 2015 through approximately June 2019, Hilliard and the Hilliard Companies, which Hilliard owned and controlled, offered and sold securities in the form of units of joint-venture interest ("JV Units") in six oil-and-gas ventures. These securities offerings raised $10,141,417 from approximately 117 investors in multiple states. None of the securities offerings was registered with the Commission.

2. Under Hilliard's supervision, sales staff of the Hilliard Companies cold-called

investors across the country to promote the offerings. Hilliard furnished the sales staff written information about the ventures for use in the promotional calls and prepared offering documents that were disseminated to investors. The offering documents contained untrue and misleading statements concerning the ventures, including: (1) the Hilliard Companies' past performance in the oil-and-gas business; (2) how the Hilliard Companies would manage and use the proceeds raised in the offerings; and (3) the projected revenue and production from the wells.

3. By reason of these activities and the conduct described in more detail below, Defendants have violated and, unless enjoined, will continue to violate, the registration and antifraud provisions of the federal securities laws, specifically Sections 5(a), 5(c), and 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. §§ 77e(a), 77e(c), and 77q(a)] and Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and Exchange Act Rule 10b-5 [17 C.F.R. § 240.10b-5].

4. In the interest of protecting the public from any further such violations, the Commission brings this action against the Defendants seeking permanent injunctions, disgorgement plus prejudgment interest, civil penalties as to each Defendant and all other equitable and ancillary relief to which the Court determines the Commission is entitled.

## JURISDICTION AND VENUE

5. The SEC brings this action under Securities Act Section 20(b) [15 U.S.C. §77t(b)] and Exchange Act Section 21(d) [15 U.S.C. §78u(d)], seeking to restrain and enjoin the Defendants permanently from engaging in such acts and practices as alleged herein.

6. The Court has jurisdiction over this action under Securities Act Section 20(d) and 22(a) [15 U.S.C. §§ 77t(d) and 77v(a)] and Exchange Act Sections 21(d), 21(e), and 27 [15 U.S.C. §§ 78u(d), 78u(e), and 78aa].

7. Each of the JV Units offered and sold as described in this complaint is a "security" as that term is defined under Securities Act Section 2(a)(1) [15 U.S. C. § 77b(a)(1)] and Exchange Act Section 3(a)(10) [5 U.S. C. § 78c(a)(10)].

8. The Defendants, directly and indirectly, made use of the mails or of the means and instrumentalities of interstate commerce in connection with the transactions, acts, practices, and courses of business described in this complaint.

9. Venue is proper because the Defendants reside in and maintain offices in—and a substantial part of the events, acts, and omissions giving rise to the claims occurred in—the Northern District of Texas.

## PARTIES

10. Plaintiff SEC is an agency of the United States government charged with regulating the country's securities industry and prosecuting civil and administrative cases to enforce the country's securities laws.

11. Defendant Hilliard, age 46, is a natural person residing in Dallas, Texas. Hilliard owned each of the Hilliard Companies, and was their president or managing partner.

12. Defendant Hilliard Oil is a Texas corporation with headquarters offices in Dallas, Texas.

13. Defendant Hilliard Helium is a Texas limited liability company with headquarters offices in Dallas, Texas.

14. Defendant Hilliard Land is a Texas corporation with headquarters offices in Dallas, Texas.

## STATEMENT OF FACTS

A. **The Joint Ventures**

15. From approximately July 2015 through approximately June 2019, Hilliard and the Hilliard Companies offered and sold securities in the form of JV Units in six oil-and-gas joint ventures. Hilliard owned and controlled each of the Hilliard Companies. He also exercised ultimate control and authority over each joint venture, including its direction, the content of its public statements, the decision to disseminate such statements, its disclosures to investors, and all decisions regarding its functions, operations, and activities.

16. Under Hilliard's direction, one of the Hilliard Companies served as the managing venturer for each joint venture. Hilliard identified and selected each joint venture's oil-and-gas well prospects. And he set the fixed price that the managing venturer would charge the joint venture for drilling and completing the wells on a "turnkey" basis—meaning the managing venturer was obligated to drill and complete the well at no additional cost to the joint venture.

17. In each joint venture, the managing venturer and the joint venture became parties to a turnkey contact and drilling and completion contracts. Hilliard signed the turnkey contracts on behalf of both parties. These contracts obligated the joint venture to pay the managing venturer an amount equal to the amount raised by selling JV Units to investors.

18. In each offering, Hilliard prepared and furnished investors a confidential information memorandum ("CIM"). The CIMs provided that, as compensation, the managing venturer would receive a fixed management fee per JV Unit sold plus an amount equal to the excess, if any, of the turnkey drilling and completion costs over the actual drilling and completion costs.

19. JV Unit investors expected to profit from the production revenue generated by

the wells, as managed and operated on behalf of the joint ventures by the Defendants.

20. The Defendants offered and sold JV Units in six offerings to 117 investors in 32 states. Collectively, these investors made 239 subscriptions for JV Units. The following table sets out the joint-venture name, the managing venturer, the offering period, and amount raised for each offering:

| Joint Venture Name | Managing Venturer | From To | Total Raised |
|---|---|---|---|
| Weathered Granite Kansas Joint Venture ("Weathered Granite Kansas") | Hilliard Oil | July 2015 June 2017 | $1,891,998 |
| Weathered Granite #2 Joint Venture ("Weathered Granite 2") | Hilliard Oil | Nov. 2015 Apr. 2018 | $3,554,442 |
| Weathered Granite #3 Joint Venture ("Weathered Granite 3") | Hilliard Helium | Apr. 2016 Apr. 2018 | $1,749,684 |
| Steel Coyote Joint Venture ("Steel Coyote") | Hilliard Helium | Mar. 2017 Apr. 2018 | $1,227,828 |
| Troika #3 Joint Venture ("Troika 3") | Hilliard Oil | Dec. 2017 Mar. 2018 | $1,261,786 |
| Troika #4 Joint Venture ("Troika 4") | Hilliard Land | June 2018 June 2019 | $455,679 |
| | | Total: | $10,141,417 |

21. Hilliard Oil did business under the assumed name "Delta Western Company" when serving as the managing venturer for Weathered Granite Kansas, Weathered Granite 2, and Troika 3.

B. **The JV Unit Offering Process**

22. To market and sell the JV Units in each joint-venture offering, Hilliard purchased lead lists from which employees of the Hilliard Companies telephoned prospective investors nationwide to solicit interest in the offerings. Hilliard supervised this sales activity, providing the employees written details about the oil-and-gas prospects to use in their sales calls.

23. The Defendants offered and sold JV Units using the means or instruments of interstate commerce, including but not limited to telephones, the internet, commercial couriers,

wire transfers, and the mails.

24. No registration statements were filed with the Commission for the offers and sales of the JV Units.

**C.     Untrue and Misleading Statements in the JV Unit Offerings**

25. In the each of the six JV Unit offerings, Hilliard drafted and disseminated to investors a CIM, describing the oil-and-gas investment opportunity. Each CIM included a section purporting to summarize the prior oil-and-gas activities of Hilliard and his affiliated companies, including Hilliard Oil, Hilliard Helium, and Hilliard Land. But each CIM omitted multiple prior oil-and-gas projects that were commercial failures. By omitting such failures, the statements in the prior-activities sections were rendered misleading. They excluded important information about the Defendants' prior activities necessary to make the summary accurate and complete.

26. In the Weathered Granite Kansas offering, Hilliard prepared and disseminated to investors a written executive summary containing untrue and misleading statements. Hilliard overstated the revenue projections in the executive summary, far exceeding the projections he received from a third-party geologist who prepared a report on the Weathered Granite Kanas well prospects. Hilliard's projections were untrue because they had no reasonable basis.

27. The table below shows the third-party geologist's reported projections compared to Hilliard's projections in the executive summary:

| Potential Gross Revenue: | Geologist's Projection | Hilliard's Projection | Overstated by: |
| --- | --- | --- | --- |
| Total Oil | $3,375,000,000 | $ 4,125,000,000 | 22.22% |
| Total Gas | $   750,000,000 | $ 2,500,000,000 | 233.33% |
| Total Helium | $   900,000,000 | $ 5,300,000,000 | 488.88% |
| Total Project | $5,025,000,000 | $11,925,000,000 | 137.31% |

### D. Misuse of Proceeds from the JV Unit Offerings

28. The Defendants used the proceeds from each of the six offerings in a manner inconsistent with the Defendants' representations. Each joint venture was governed by a joint-venture agreement, which Hilliard prepared and disseminated to investors. Each joint-venture agreement required the managing venturer to deposit all joint-venture receipts into one or more bank accounts established for that purpose. The agreement required the managing venturer to pay all joint-venture expenditures from such accounts. The agreement further provided that "no other funds shall in any way be commingled" with joint-venture receipts.

29. As to each joint venture, however, Hilliard withdrew the offering proceeds from the joint venture's bank accounts and commingled the proceeds by depositing them together into other accounts under his control. From these other accounts Hilliard paid personal expenses, the Hilliard Companies' expenses, and other expenses unrelated to the Hilliard Companies.

30. For example, the Weathered Granite Kansas bank account received its initial deposit of investor funds on August 25, 2015. The investment totaled $66,174. By August 31, 2015, $61,000 of those funds were transferred to a Hilliard Oil operating account controlled by Hilliard. From this account, in which investor funds and other funds were commingled, money was spent on payroll for Hilliard Companies, IRS tax payments, rent, accounting and legal fees, and personal expenses including restaurants, retail purchases, gas stations, grocery stores, movie theaters, a liquor store, cable-television and cell-phone services, and cash withdrawals. The same pattern of transferring and spending investor funds continued in in the subsequent offerings through June 2019.

**FIRST CLAIM**
**Violations of Securities Act Sections 5(a) and 5(c)**
**[15 U.S.C. §§ 77e(a) and 77e (c)]**

31. Plaintiff Commission re-alleges and incorporates paragraphs 1 through 30 of this Complaint by reference as if set forth verbatim in this Claim.

32. Defendants, directly or indirectly, singly or in concert with others, have offered to sell, sold, and delivered after sale, certain securities and have: (a) made use of the means and instruments of transportation and communication in interstate commerce and of the mails to sell securities, through the use of email, interstate carrier, brokerage transactions, and otherwise; (b) carried and caused to be carried through the mails and in interstate commerce by the means and instruments of transportation such securities for the purpose of sale and for delivery after sale; and (c) made use of the means or instruments of transportation and communication in interstate commerce and of the mails to offer to sell such securities.

33. No valid registration statement was filed or was in effect with the Commission in connection with Defendants' offer or sale of securities.

34. By reason of the foregoing, Defendants have violated, and unless enjoined will continue to violate, Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. §§ 77e(a) and 77e (c)]

**SECOND CLAIM**
**Violations of Securities Act Section 17(a)**
**[15 U.S.C. § 77q(a)]**

35. Plaintiff Commission re-alleges and incorporates paragraphs 1 through 30 of this Complaint by reference as if set forth verbatim in this Claim.

36. Defendants, directly or indirectly, singly or in concert with others, in the offer or sale of securities, by use of the means and instrumentalities of interstate commerce or by use of the mails have: (a) employed devices, schemes, and artifices to defraud; (b) obtained money or

property by means of untrue statements of a material fact and omitted to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaged in transactions, practices, and courses of business which operate or would operate as a fraud and deceit upon the purchasers.

37. With respect to violations of Securities Act Sections 17(a)(2) and (3), Defendants were negligent in their conduct and in the untrue and misleading statements alleged herein. With respect to violations of Securities Act Section 17(a)(1), Defendants engaged in the referenced conduct and made the referenced untrue and misleading statements with scienter.

38. For these reasons, Defendants have violated and, unless enjoined, will continue to violate Securities Act Section 17(a) [15 U.S.C. § 77q(a)].

## THIRD CLAIM
### Violations of Exchange Act Section 10(b) and Rule 10b-5
### [15 U.S.C. § 78j(b); 17 C.F.R. § 240.10b-5]

39. Plaintiff Commission re-alleges and incorporates paragraphs 1 through 30 of this Complaint by reference as if set forth verbatim in this Claim.

40. Defendants, directly or indirectly, singly or in concert with others, in connection with the purchase or sale of securities, by use of the means and instrumentalities of interstate commerce or by use of the mails have: (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of a material fact and omitted to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaged in acts, practices, and courses of business which operate or would operate as a fraud and deceit upon purchasers, prospective purchasers, and any other persons.

41. Defendants engaged in the above-referenced conduct and made the above-

referenced untrue and misleading statements with scienter.

42.     For these reasons, Defendants violated and, unless enjoined, will continue to violate Exchange Act Section 10(b) [15 U.S.C. § 78j(b)] and Rule 10b-5 [17 C.F.R. § 240.10b-5].

## RELIEF REQUESTED

Plaintiff Commission respectfully requests that this Court:

(1)     Permanently enjoin each of the Defendants from violating Securities Act Sections 5(a), 5(c), and 17(a) [15 U.S.C. §§ 77e(a), 77e(c), and 77q(a)], Exchange Act Section 10(b) [15 U.S.C. § 78j(b)], and Exchange Act Rule 10b-5 [17 C.F.R. § 240.10b-5];

(2)     Permanently enjoin Hilliard from participating directly or indirectly, including, but not limited to, through any entity owned or controlled by him, in the issuance, purchase, offer, or sale of any unregistered securities, provided however that such injunction shall not prevent him from purchasing or selling securities for his own account;

(3)     Order each of the Defendants to pay a civil penalty Securities Act Section 20(d) [15 U.S.C. § 77t(d)] and Exchange Act Section 21(d) [15 U.S.C. § 78u(d)] for the violations alleged herein; and

(4)     Order such other relief as this Court may deem just and proper.

DATED:   April 16, 2020                    Respectfully submitted,

                                           s/ Jennifer D. Reece
                                           Jennifer D. Reece
                                           Texas Bar No. 00796242
                                           United States Securities and Exchange Commission
                                           Burnett Plaza, Suite 1900
                                           801 Cherry Street, Unit 18
                                           Fort Worth, Texas 76102
                                           Direct phone: (817) 978-6442
                                           Fax: (817) 978-4927
                                           reecej@sec.gov

COUNSEL FOR PLAINTIFF
SECURITIES AND EXCHANGE COMMISSION